IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| CONSUMER FINANCIAL PROTECTION BUREAU,<br><br>Plaintiff,<br><br>vs.<br><br>GOLDEN VALLEY LENDING, INC., *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)   Case No. 17-2521-JAR-JPO<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**BRIEF AS *AMICUS CURIAE* BY STATE OF OKLAHOMA IN SUPPORT OF DEFENDANTS' SECOND AMENDED MOTION TO DISMISS**

## I. Statement of Interest

*Amicus curiae* is the State of Oklahoma.[1] Without statutory authority, the Consumer Financial Protection Bureau (CFPB) has been attempting to expand its jurisdiction to tribal sovereigns. As part of this effort, the CFPB claims to have jurisdiction to regulate States, as well. *Amicus* Oklahoma offers a number of financial services that could be swept up in the CFPB's regulatory gambit. This includes student loan programs, credit unions, and other endeavors that will be imperiled if the CFPB's overreach is allowed to stand and proliferate. Oklahoma therefore has a very good reason to push back against the CFPB, as its actions threaten the State's institutions and diminish its sovereignty, as well as that of others in our federal system.

## II. Nature of the Matter Before the Court

CFPB has filed a Complaint (ECF No. 1) asserting claims against four economic development arms of a federally recognized sovereign Indian Nation ("Defendants").

---

[1] The State of Oklahoma files this brief pursuant to the Court's November 3, 2017 Order (ECF No. 84) granting its motion for leave to file an *amicus curiae* brief in support of Defendants' Second Amended Motion to Dismiss (ECF No. 61). No party or counsel for a party authored this brief in whole or in part. No party, counsel for a party, or person other than *amicus curiae* or its counsel made any monetary contribution intended to fund the preparation or submission of this brief.

1

Defendants have filed a Second Amended Motion to Dismiss (ECF No. 61) asserting, *inter alia*, that the two federal statutes that the CFPB seeks to enforce—the Consumer Financial Protection Act (CFPA) and Truth in Lending Act (TILA)—do not apply to Defendants per the express language of those statutes and binding precedent from the U.S. Supreme Court and the Tenth Circuit. Oklahoma agrees with Defendants' position that the CFPB lacks jurisdiction over Defendants and that the pending Complaint (ECF No. 1) should be dismissed.

### III. Issue Presented

Whether the CFPB has jurisdiction to regulate tribal entities and States.

### IV. Arguments and Authorities

**A.** **Summary of Argument.** The CFPB threatens our government's separation of powers—both horizontal and vertical. First, the very existence of the CFPB represents a serious violation of the horizontal separation of the powers of the federal government. As a panel of the D.C. Circuit has already held, the concentration of power in the hands of one unelected individual in the Executive Branch, unaccountable to the elected head of that Branch or to the Legislative Branch, violates the horizontal separation of powers. This case is emblematic of the abuses of power that can occur when it is impermissibly concentrated in one man.

Second, and more directly, this case is about the vertical separation of powers, because the CFPB has claimed—without express statutory authority—that it may regulate both federally recognized Indian tribes and sovereign States. This is a threat to our structure of government, and it disregards the Supreme Court's command (echoed by the Tenth Circuit) that federal statutes should not be construed to apply to sovereign entities absent a clear statement from Congress. *Amicus* Oklahoma now faces the prospect of the CFPB—and potentially other federal

agencies—asserting jurisdiction over States and their agencies without clear congressional authorization. This would severely damage the vertical separation of powers.

**B.     The CFPB is constitutionally suspect, at best.** In FEDERALIST NO. 47, James Madison wrote that the "accumulation of all powers . . . in the same hands . . . may justly be pronounced the very definition of tyranny."[2] The vertical and horizontal separation of powers were crafted to avoid such a result. To the Framers, the separation of powers and the system of checks and balances it enabled "were more than just theories"; rather, "[t]hey were practical and real protections for individual liberty in the new Constitution."[3] As a result, the Supreme Court "has repeatedly invoked the 'separation of powers' and 'the constitutional system of checks and balances' as core principles of our constitutional design."[4]

Since its inception on July 21, 2010, the CFPB has been fraught with controversy precisely because of its clashes with the separation of powers. The CFPB was explicitly designed to be an "independent" bureaucratic agency—a questionable enough proposition, constitutionally[5]—but with a twist that makes things far more problematic: Unlike most other independent agencies, the CFPB is "headed not by a multi-member commission but rather by a single Director."[6] And because the CFPB is an independent entity, the President can only remove this Director for cause.[7]

As a panel of the D.C. Circuit has recently observed, current CFPB Director Richard Cordray: (1) "possesses more unilateral authority . . . than any single commissioner or board

---

[2]     THE FEDERALIST No. 47, at 301 (James Madison) (C. Rossiter ed. 1961).
[3]     *Perez v. Mortgage Bankers Ass'n*, 135 S. Ct. 1199, 1216 (2015) (Thomas, J., concurring in the judgment).
[4]     *Id.* at 1215.
[5]     *See, e.g., Process Gas Consumers Grp. v. Consumer Energy Council of Am.*, 463 U.S. 1216, 1219 (1983) (White, J., dissenting) ("[T]he independent agencies, once created, for all practical purposes are a fourth branch of the government not subject to the direct control of either Congress or the executive branch. I cannot believe that the Constitution commands such a result.").
[6]     *PHH Corp. v. CFPB*, 839 F.3d 1, 6-7 (D.C. Cir. 2016), *reh'g en banc granted, order vacated* (Feb. 16, 2017).
[7]     *Id.* at 5-6.

3

member in any other independent agency in the U.S. Government"; (2) "enjoys more unilateral authority than any other officer in any of the three branches of the U.S. Government, other than the President"; and (3) "possesses enormous power over American business, American consumers, and the overall U.S. economy."[8] More specifically,

> [t)he Director unilaterally enforces 19 federal consumer protection statutes, covering everything from home finance to student loans to credit cards to banking practices. The Director alone decides what rules to issue; how to enforce, when to enforce, and against whom to enforce the law; and what sanctions and penalties to impose on violators of the law. . . . That combination of power that is massive in scope, concentrated in a single person, and unaccountable to the President triggers [constitutional concerns].[9]

On top of all that, the CFPB also controls its own budget and is therefore immune from Congress checking it with the power of the purse.[10]

Last fall, after finding that the CFPB's structure "represents a gross departure from settled historical practice," the D.C. Circuit panel struck down the requirement that the CFBP director be fired "for cause" as unconstitutional.[11] The "concentration of enormous executive power in a single, unaccountable, unchecked Director," Judge Kavanaugh wrote, "poses a far greater risk of arbitrary decisionmaking and abuse of power, and a far greater threat to individual liberty, than does a multi-member independent agency."[12] The hubris that necessarily follows such an accumulation of power is on full display in the present case.

   C. **<u>The CFPB lacks jurisdiction over tribes and sovereign States.</u>** Not content with the enormous clout it already claims over individual citizens and corporate entities, the CFPB has now unilaterally sought to exert its will over sovereign tribes and States. Under the

---

[8]  *Id.* at 6-7.
[9]  *Id.* at 7.
[10]  *See* 12 U.S.C. § 5497(a)(1)-(2).
[11]  *PHH Corp.*, 839 F.3d at 8.
[12]  *Id.*

Consumer Financial Protection Act (CFPA), "State[s]" are to be co-regulators with the CFPB.[13] The CFPA defines "State" to include sovereign States, such as Oklahoma, as well as Indian tribes and their arms, including Defendants.[14] Elsewhere, the CFPA grants the CFPB the authority to investigate "any person" who provides consumer financial products or services or violates federal consumer financial laws.[15] The term "person" is defined as "an individual, partnership, company, corporation, association (incorporated or unincorporated), trust, estate, cooperative organization, or other entity."[16] Notably absent from this list are States and tribes.

As part of a series of legal rules designed to protect and promote federalism,[17] the Supreme Court has held that, absent a clear statement from Congress, federal statutes do *not* subject sovereign entities to regulation.[18] The Supreme Court has also held that ambiguous language is to be interpreted in favor of Indian tribes.[19] In a similar vein, the Tenth Circuit has recognized the "well-established canon of Indian law that 'statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit.'"[20] Indeed, "[i]n this circuit, respect for Indian sovereignty means that federal regulatory schemes do not apply to tribal governments exercising their sovereign authority absent express congressional authorization."[21]

---

[13] 12 U.S.C. § 5495; *see also* 12 U.S.C. §§ 5493(c)(2)(B), 5493(e)(1)(B)-(C), 5493(g)(3), 5512(c)(6)-(7), 5514(b)(3), 5515(b)(2), 5515(e)(2), 5551(a)-(b), 5552(a).
[14] 12 U.S.C. § 5481(27).
[15] 12 U.S.C. § 5562(c)(1).
[16] 12 U.S.C. § 5481(19).
[17] *See, e.g., Younger v. Harris,* 401 U.S. 37 (1971) (abstention); *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218 (1947) (presumption against preemption); *Erie R. Co. v. Tompkins,* 304 U.S. 64 (1938) (choice of law).
[18] *Vermont Agency of Nat. Res. v. United States ex rel. Stevens,* 529 U.S. 765, 780-81 (2000).
[19] *Cty. of Yakima v. Confederated Tribes & Bands of Yakima Indian Nation,* 502 U.S. 251, 269 (1992); *Montana v. Blackfeet Tribe of Indians,* 471 U.S. 759, 767-68 (1985); *cf. Wyeth v. Levin,* 555 U.S. 555, 565 (2009) (requiring clear statement before interpreting federal law to preempt State law).
[20] *Dobbs v. Anthem Blue Cross & Blue Shield,* 600 F.3d 1275, 1283 (10th Cir. 2010) (quoting *NLRB v. Pueblo of San Juan,* 276 F.3d 1186, 1191 (10th Cir. 2002) (*en banc*)).
[21] *Id.*

But the CFPB is not exactly known for respecting well-established legal rules.[22] Instead, ignoring the guidance of the Supreme Court and the Tenth Circuit, as well as the plain text of the statute, the CFPB has elsewhere interpreted "person" under the CFPA as including both Indian tribes *and* States, such that the CFPB could send extensive civil investigative demands to Defendants and *amicus*.[23] If this is correct, Oklahoma operates a number of agencies that the CFPB may now regulate, investigate, and coerce in the same way the CFPB is investigating Defendants as arms of Indian tribes. Allowing the CFPB—an independent, unchecked, and virtually unaccountable bureaucratic agency—to regulate States in this manner would significantly alter the balance of power in our federalist system of government. It is certain Congress did not implement so fundamental a change through such oblique statutory language.[24]

The CFPB's decision to unleash the full panoply of its regulatory armory against tribes, States, and their agencies is without textual support, bad policy, and contrary to our system of federalism and the separation of powers. It is also against the express binding precedent of the U.S. Supreme Court and the Tenth Circuit, which decline to assume that generally applicable statutes apply to Indian tribes in the absence of clear statutory intent. Again, *amicus* Oklahoma is especially alarmed that the CFPB claims jurisdiction over States and State entities in the same

---

[22] *See PHH Corp.*, 839 F.3d at 8 ("[T]he single-Director structure of the CFPB represents a gross departure from settled historical practice."); *see also* Ronald L. Rubin, *The Tragic Downfall of the Consumer Financial Protection Bureau*, NATIONAL REVIEW ONLINE, Dec. 21, 2016, *available at* http://www.nationalreview.com/article/443227/consumer-financial-protection-bureau-tragic-failures ("For two decades, HUD had interpreted the law and provided guidance. . . . Cordray's decision was stunning: HUD's interpretation was wrong.").

[23] *See* Brief of Petitioner-Appellee CFPB at 30, *CFPB v. Great Plains Dending, DLC*, No. 14-55900 (9th Cir. 2017), 2015 WL 890556 ("As an initial matter, states and state-owned companies are neither exempt from regulation under the CFPA, nor exempt from complying with the Bureau's CIDs.").

[24] *Cf. Whitman v. Am. Trucking Ass'n*, 531 U.S. 457, 468 (2001) ("Congress . . . does not alter the fundamental details of a regulatory scheme in vague terms or ancillary provisions—it does not, one might say, hide elephants in mouseholes.").

6

breath as its claims authority over Indian tribes.[25] Such unchecked assertion of power requires this Court to dismiss CFPB's Complaint (ECF No. 1).

## V. Conclusion

For these reasons, this Court should grant Defendants' Second Amended Motion to Dismiss (ECF No. 61).

Respectfully submitted,

McANANY, VAN CLEAVE & PHILLIPS, P.A.
10 E. Cambridge Circle Drive, Suite 300
Kansas City, Kansas 66103
Telephone: (913) 371-3838
Facsimile: (913) 371-4722
E-mail: ggoheen@mvplaw.com


By: /s/ Gregory P. Goheen
      GREGORY P. GOHEEN   #16291

ZACH WEST (*pro hac vice*)
OKLAHOMA OFFICE OF THE ATTORNEY GENERAL
313 N.E. 21st Street
Oklahoma City, Oklahoma 73105
Telephone: (405) 522-4798
Facsimile: (405) 521-4518
E-mail: zach.west@oag.ok.gov

Attorneys for State of Oklahoma, Office of the Attorney General

---

[25] To be clear, Oklahoma does not mean to imply that States and tribes enjoy identical sovereignty, as the two are not co-extensive. *See, e.g.*, *Washington v. Confederated Tribes of Colville Indian Reservation*, 447 U.S. 134, 165 (1980) (Brennan, J., concurring in part and dissenting in part) ("While they are sovereign for some purposes, it is now clear that Indian reservations do not partake of the full territorial sovereignty of States or foreign countries.").

## CERTIFICATE OF SERVICE

I hereby certify that on the 6th day of November 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which sent notification of such filing to the following:

Gabriel Sean Harris Hopkins
Stephen Jacques
Vanessa Anne Buchko
Consumer Financial Protection Bureau Enforcement
1700 G. Street NW
Washington, DC 20552
Attorneys for Plaintiff

Beth A. Wilkinson
Brant W. Bishop
Lori Alvino McGill
Rakesh Kilaru
Wilkinson Walsh & Askovitz, LLC
2001 M Street, NW, 10th Floor
Washington, DC 22036

Paul M. Croker
Armstrong Teasdale, LLP
2345 Grand Boulevard, Suite 1500
Kansas City, MO 64108
Attorneys for Defendant Golden Valley Lending, Inc.,
Silver Cloud Financial, Inc., Mountain Summit Financial, Inc.
and Majestic Lake Financial, Inc.

Barry R. Grissom
Polsinelli PC
900 W. 48th Place, Suite 900
Kansas City, MO 64112

Brendan V. Johnson
Robins Kaplan, LLP
101 South Main Street, Suite 100
Sioux Falls, SD 57104

Sarah J. Auchterlonie
Carlton Fields Jorden Burt, PA
1025 Thomas Jefferson Street, NW, Suite 400-East
Washington, DC 20007

Timothy W. Billion
Robins Kaplan, LLP
800 LaSalle Avenue, Suite 2800
Minneapolis, MN 55402
Attorneys for Amicus Habematolel Pomo of Upper Lake
Consumer Financial Services Regulatory Commission

Nathaniel A. Dulle
Wallace Saunders Austin Brown & Enochs Chartered
10111 West 87th Street
Overland Park, KS 66212
Attorneys for Amicus Native American Financial Services
Association

/s/ Gregory P. Goheen